IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Whitney Dawkins, Jr., | Civ. No. 10-00086 HG-KSC |
| Plaintiff, | |
| vs. | |
| City and County of Honolulu; Zane Hamrick, police officer; Barry Tong, police officer; Windward Community Federal Credit Union; John Does 1-10; | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ZANE HAMRICK AND BARRY TONG'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff filed a Complaint alleging violations of his civil rights under the United States Constitution and related state law tort claims. Defendants Zane Hamrick and Barry Tong filed a Motion for Summary Judgment. (Doc. 80). Defendant City and County of Honolulu filed a separate Motion for Summary Judgment. (Doc. 83). The Motions are both **GRANTED IN PART AND DENIED IN PART.**

**PROCEDURAL HISTORY**

On February 22, 2010, Plaintiff filed a Complaint. (Doc. 1).

On May 17, 2010, Defendant Windward Community Federal Credit Union filed an Answer to the Complaint and Cross-claim against Defendants City and County of Honolulu, Zane Hamrick, and Barry

Tong. (Doc. 7).

On June 24, 2010, Defendants Zane Hamrick and Barry Tong filed a Motion for Partial Dismissal. (Doc. 17).

On August 30, 2010, the Court held a hearing on Defendants Zane Hamrick and Barry Tong's Motion for Partial Dismissal. (<u>See</u> Doc. 40).

On August 31, 2010, the Court issued an Order granting in part and denying in part Defendants Hamrick and Tong's Motion for Partial Dismissal. (Doc. 45). The Court dismissed the claim that Defendants Hamrick and Tong violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

On October 29, 2010, Defendants Hamrick and Tong filed an Answer to the Complaint. (Doc. 60).

On August 11, 2010, Defendant City and County of Honolulu filed a Motion to Dismiss. (Doc. 34).

Pursuant to Local Rule of Civil Procedure 7.2(d), the Court elected to decide the Motion without a hearing. (Doc. 35).

On December 30, 3010, the Court issued an Order granting in part and denying in part Defendant City and County of Honolulu's Motion to Dismiss. (Doc. 74). The Court dismissed with prejudice Plaintiff's claim that he was illegally searched and seized in violation of due process. The Court dismissed Plaintiff's right to contract, equal protection, Fourth Amendment of the United States

Constitution illegal search and seizure, and negligent failure to supervise claims, with leave to amend. The Court allowed all other claims to survive.

On November 5, 2010, Defendant Windward Community Federal Credit Union file a Petition for Finding of Good Faith Settlement. (Doc. 62).

On November 18, 2010, Defendants City and County of Honolulu, Zane Hamrick, and Barry Tong filed a Statement of No Opposition as to Defendant Windward Community Federal Credit Union's Petition for Finding of Good Faith Settlement. (Doc. 69).

On December 7, 2010, a hearing on Defendant Windward Community Federal Credit Union's Petition for Finding of Good Faith Settlement was held before Magistrate Judge Kevin S.C. Chang. (<u>See</u> Doc. 71).

On December 16, 2010, Magistrate Judge Chang issued a Findings and Recommendation in which he recommended that the Petition for Finding of Good Faith Settlement be granted. (Doc. 72).

On January 20, 2011, the Court issued an Order adopting Magistrate Judge Chang's Findings and Recommendation and granting the Petition for Finding of Good Faith Settlement. (Doc. 75).

On March 8, 2011, the Court signed a Stipulation dismissing Defendant/Cross-Claimant Windward Community Federal Credit Union with prejudice. (Doc. 88).

On February 23, 2011, Defendant City and County of Honolulu filed an Answer to the Complaint. (Doc. 76).

On March 2, 2011, Defendants Zane Hamrick and Barry Tong filed a Motion for Summary Judgment. (Doc. 80).

On March 2, 2011, Defendant City and County of Honolulu filed a Motion for Summary Judgment. (Doc. 83).

On March 22, 2011, Plaintiff filed one Opposition to the Motions for Summary Judgment and one Concise Statement of Facts in support. (Docs. 91, 93). Plaintiff attached Exhibits 1, 2, 3, 3-A, 4, and 5 to the Concise Statement of Facts. (Docs. 91-2 to 91-7).

On the same date, Plaintiff separately filed additional documents entitled "Exhibit 6" (Doc. 92) and "Exhibit 6-A" (Doc. 94).

On March 23, 2011, Plaintiff filed a Declaration of Whitney Dawkins. (Doc. 95). Plaintiff attached "Exhibit 7" to the Declaration. (Doc. 95-1).

On March 29, 2011, the Court struck Plaintiff's Opposition and Concise Statement of Facts, and ordered Plaintiff to file separate oppositions and separate statements of fact for each Motion for Summary Judgment. (Doc. 97).

On April 4, 2011, Plaintiff filed an Opposition to Defendant City and County of Honolulu's Motion for Summary Judgment (Doc. 103) and a Concise Statement of Facts in support (Doc. 101). In the Concise Statements, Plaintiff cites to the exhibits that he previously attached to his stricken concise statement of facts. Although Plaintiff did not re-file these exhibits as attachments to

4

his new Concise Statement, it is clear that he is citing to the same documents. Defendants did not object to Plaintiff's citation to these exhibits. The Court will treat the exhibits attached to Plaintiff's stricken concise statements of facts as exhibits to Plaintiff's new Concise Statement of Facts.

On the April 4, 2011, Plaintiff filed an Opposition to Defendants Hamrick and Tong's Motion for Summary Judgment (Doc. 105), and a Concise Statement of Facts in support (Doc. 102). In the Concise Statement, Plaintiff again cites to the exhibits that he previously attached to his stricken concise statement of facts. The Court will treat the exhibits attached to Plaintiff's stricken concise statements of facts as exhibits to Plaintiff's new Concise Statement of Facts.

On April 5, 2011, Plaintiff filed a Declaration. (Doc. 106). The Declaration is identical to Plaintiff's previous Declaration. (Doc. 95). Plaintiff submitted both Declarations with an /s/ signature, and he was directed to submit another version with a scanned image of his signature.

On April 7, 2011, Plaintiff filed a new Declaration with a scanned image of his signature. (Doc. 107-1). When referring to Plaintiff's "Declaration" in this Order, the Court will refer to the version of the Declaration containing the scanned signature. (Doc. 107-1). Plaintiff is admonished to follow the Local Rules of Civil Procedure and the Federal Rules of Civil Procedure. His continuing

disregard for the rules may result in sanctions in the future.

On April 11, 2011, Defendant City and Count of Honolulu filed a Reply. (Doc. 108).

On April 11, 2011, Defendants Zane Hamrick and Barry Tong filed a Reply. (Doc. 109).

On April 14, 2011, the Court held a hearing on the two Motions for Summary Judgment. (See Doc. 110).

**BACKGROUND**

Plaintiff Whitney Dawkins alleges that he was arrested without probable cause and subjected to excessive force when he attempted to open an account at the Windward Community Federal Credit Union. Defendants Zane Hamrick, Barry Tong, and the City and County of Honolulu dispute Plaintiff's characterization of the incident. The parties' different descriptions of the incident, as supported by their respective declarations, are summarized below.

**I.    Plaintiff's Account of Events:**

On March 24, 2008, Plaintiff Whitney Dawkins went to the Windward Community Federal Credit Union[1] (the "credit union" or the "bank") to open an investment account. (Declaration of Whitney

---

[1]Defendant Windward Community Federal Credit Union was dismissed after settlement pursuant to the parties' Stipulation on March 8, 2011. (Doc. 88).

Dawkins, filed April 7, 2011, at ¶ 5 (Doc. 107)). Dawkins initially spoke to a bank teller, who then brought Dawkins to speak to a manager. (Id. at ¶ 6). Dawkins describes his interaction with the manager:

> [I]t seem[ed] like she was avoiding telling me what kind of accounts the bank offered and kept repeating herself. It seemed like she did not want to help me . . . .

(Id. a ¶ 7). "Next thing I knew," Dawkins states, "the police arrived." (Id. at ¶ 8). Officer Zane Hamrick told Dawkins that he had to leave the bank, and then grabbed Dawkins on a nerve pressure point in his shoulder and tried to pull him out of the bank. (Id. at ¶ 12). Dawkins moved out of the way, and told Officer Hamrick not to touch him and that he had a lawyer. Dawkins then told the officers that he would get his papers and leave. Dawkins told the officers, "I came to the back to take care of some business." He again told them not to touch him and that he has a lawyer, and stated that they were violating his civil right to conduct business. (Id.).

Officers Hamrick and Tong tried to "lunge" for Dawkins, and Dawkins backed into a corner in response. (Id. at ¶ 13). The officers tried to grab Dawkins, and one tried to knock his feet from underneath him. According to Dawkins's Declaration, Officer Tong pushed Dawkins into the wall and punched him twice in the face. (Id.). Officer Hamrick then shot Dawkins with a taser. (Id. at 14). The taser felt like a "hard punch and electronic shot," and caused

Dawkins to immediately run out of the bank to avoid being shocked or punched again. (Id.).

Dawkins ran toward an intersection, where he was stopped by two police officers, one of whom was driving a car. (Id. at ¶ 15). One of the police officers told Dawkins to stop, and Dawkins complied. (Id.). The officer then pushed Dawkins to the ground and told him to lay down. (Id. at ¶ 16). Officer Hamrick then arrived and sprayed Dawkins with pepper spray in the eyes, and choked his neck. (Id.). According to Dawkins, he was held down by at least four officers. Dawkins reports that he had trouble breathing due to the pepper spray and because the officers were pushing down on his body. Dawkins states that he kept moving in an attempt to breathe, as he was choking and gagging. Meanwhile, he reports, the officers were kicking and hitting Dawkins, and Dawkins almost passed out. (Id.).

Plaintiff states that a passer-by took pictures of Dawkins being pepper sprayed, wrestled down, and beaten and kicked by the officers. (Id. at ¶ 17). He reports that a passer-by complained to the officers that they were using excessive force on Dawkins. A person later e-mailed photos to the police. (Id.). Copies of the photos, obtained by Dawkins through discovery, are shown in Exhibit 7. (Exhibit 7, attached to Declaration of Whitney Dawkins, filed March 23, 2011 (Doc. 95-1)).

After being shackled and handcuffed, Dawkins told the officers he needed to be taken to the hospital because he was hurting all

over. (<u>Id.</u> at ¶ 19). Dawkins was taken to the Castle Hospital emergency ward. (<u>Id.</u>). From Castle Hospital Dawkins was transferred to a Kaiser hospital, and was hospitalized for two weeks. (<u>Id.</u> at ¶ 20). On March 25, 2008, Dr. John Murray wrote a medical report for Dawkins. (<u>Id.</u> at ¶ 22). Dr. Murray indicated that Dawkins had a heart-rate issue ("superventricial tachycardia"), and had slightly elevated creatinine levels. (<u>Id.</u> at ¶ 22-23). Dr. also noted, at the bottom of his report, the following diagnoses: rhabdomyolysis; acute kidney failure w/lesion tubular necrosis; schizophrenia; hypertension; hypothyroidism; acute anxiety; and cervicalisia. (<u>Id.</u> at ¶ 34). Dawkins claims that he suffered an abnormally rapid heart beat (an "arrhythmia"), rhabdomyolisis, and acute renal failure as a "direct result" of the taser shock and subsequent physical assault by the officers. (Amended Concise Statement of Facts at ¶ 12 (Doc. 101)).


## II. Defendants' Account of Events:

Defendants Zane Hamrick and Barry Tong, police officers, state that they went to the bank in response to a report of a man arguing with bank employees. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 3 (Doc. 81-1)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 3 (Doc. 81-2)). On

arrival, the officers recognized Plaintiff Whitney Dawkins from prior contact and had reason to believe he had mental health issues. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-1)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-2)).

According to Hamrick, Dawkins would regularly call 911 and come into the Kailua police station to report that telephone wires were making contact with him. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-1)). Hamrick states that Dawkins would refuse to leave the station until the police made reports about these matters. (Id.).

According to Tong, Dawkins is known to police officers as an individual with mental health issues. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-2)). Tong states that Dawkins often scares individuals he comes into contact with because of his large and imposing size. (Id. at ¶ 5). Tong states that Dawkins does not have a history of violence and officers have had success diffusing potentially violent or dangerous situations with him by asking him to write out a statement. (Id.).

After arriving to the bank, Officers Hamrick and Tong spoke to

bank teller Patricia Comeaux. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-1)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-2)). According to Hamrick, Comeaux informed the officers that Dawkins had asked to open a bank account, and the tellers had attempted to explain to him what he needed to do. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-1). Hamrick states that Comeaux told him that Dawkins refused to accept the explanations given by the tellers, and after about 35 minutes of questioning from Dawkins, she and the other bank employees became "very afraid" of Dawkins and feared for their safety. (Id.). Hamrick states that Comeaux told the officers that she asked Dawkins to leave several times, but he refused. (Id.). Hamrick states that Comeaux told the officers that the bank manager, Noreen Padeken, did not want Dawkins in the bank and wanted the officers to make him leave. (Id.). Tong states that the officers were informed by both Comeaux and bank manager Padeken that Dawkins was acting in a bizarre fashion that frightened the tellers and the patrons, and he had been asked to leave. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-2)).

Comeaux submitted a written statement to the officers. (Statement of Patricia Comeaux, attached as Exhibit B to the Declaration of Barry Tong, filed March 2, 2011 (81-2)). Comeaux wrote that Dawkins refused to accept any explanation about what he needed to do to open an account, and kept asking questions. (<u>Id.</u>). She wrote that after 35 minutes of questioning, she "became very afraid of him." (<u>Id.</u>). She asked him to leave "several times," and "finally ran to the back and called police." (<u>Id.</u>).

After talking to Comeaux, Hamrick states that he approached Dawkins, informed him that the bank manager wanted to him to leave, and asked him to gather his things and come outside. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 6 (Doc. 81-2)). Tong states that he walked up to Dawkins and asked him to come outside to talk. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-2)). Hamrick and Tong state that Dawkins refused to leave and told the officers to get away from him. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 6-7 (Doc. 81-2)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-2)). According to the officers, Dawkins then walked to the rear of the bank and stood with

his back against the wall. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 7 (Doc. 81-2)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 6 (Doc. 81-2)). Dawkins said, "don't touch me, I have a lawyer," repeatedly. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 7 (Doc. 81-2)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 6 (Doc. 81-2)). Hamrick states that he repeatedly asked Dawkins to leave, and Dawkins refused. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 8 (Doc. 81-2)). Hamrick states that he placed his arm on Dawkins's shoulder and told him that if he did not leave he would be arrested for trespass. (<u>Id.</u>). Hamrick attempted to move Dawkins toward the door with a "light push," but Dawkins used "passive resistance" and moved further to the interior of the bank, taking up a dead weight posture. (<u>Id.</u>).

Tong states that he and Hamrick tried to grab a hold of Dawkins, but he resisted and held his arms tightly against his chest. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2,

2011, at ¶ 8 (Doc. 81-2)). Tong states that the officers took Dawkins to the ground by grabbing his front shirt and using a leg sweep technique. (Id.). According to Tong, Dawkins continued to resist the officers's attempt to arrest him, started to grab at Tong, and "appeared to attempt to assault" both Hamrick and Tong. (Id.).

Hamrick states that he released his grip on Dawkins, and shouted to Tong to back away as he was going to deploy his taser. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 11 (Doc. 81-1)). Hamrick states that Tong stood up and moved away from Dawkins. (Id.). According to Hamrick, Dawkins then also stood up and moved toward Tong, waiving his arms in a circular motion. (Id.). Hamrick states that Dawkins then started to move toward Hamrick, at which point Hamrick fired his taser. (Id. at ¶ 12). According to Hamrick, one of the two taser probes "clearly failed to contact Dawkins." (Id. at ¶ 12).

Hamrick states that Dawkins then ran out of the bank, and the officers chased after him. (Id.). Tong states that he pursued Dawkins in a vehicle, while Hamrick pursued on foot. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 10 (Doc. 81-2). Hamrick states that the officers caught up with Dawkins and ordered him to sit down. (Declaration of Zane Hamrick, Exhibit 1 to

Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 13 (Doc. 81-1)). After refusing, Hamrick states, the officers took Dawkins to the ground. (<u>Id.</u>). Hamrick states that he sprayed Dawkins's face with a one second burst of "O.C. spray," but Dawkins continued to resist. (<u>Id.</u>). Sometime during the struggle, Hamrick states, Sgt. Jonathan Grems arrived and assisted in controlling Dawkins. (<u>Id.</u> at ¶ 14). Hamrick states that after struggling with Dawkins for several more minutes, the officers were able to handcuff him. (<u>Id.</u>). Dawkins was kicking his legs and thrashing around. (<u>Id.</u>). He was arrested and then transported to the Castle hospital for treatment. (<u>Id.</u>).


## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323 (1986)).  The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325.  The moving party must, however, show that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S.

at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed.R.Civ.P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).


**ANALYSIS**

**I.   Defendants' Hamrick and Tong's Motion for Summary Judgment**

    **A.   Remaining Claims Against Defendants Hamrick and Tong**

In the Order of August 31, 2010, the Court dismissed Plaintiff's equal protection claim against Defendants Hamrick and Tong.  The following claims against Hamrick and Tong remain:

    (1)   arrest without probable cause in violation of the Fourth Amendment of the United States Constitution (Count 3)
    (2)   denial of right to contract under 42 U.S.C. § 1981 (Count 3)
    (3)   illegal search and seizure under Fourth and Fourteenth Amendments of the United States Constitution(Count 4)
    (4)   excessive force under Fourth Amendment of the United States Constitution (Count 4)
    (5)   false arrest - state law tort claim (Count 5)
    (6)   negligent false arrest, imprisonment, and injury (Count 6)
    (7)   assault and battery (Count 7)
    (8)   punitive damages (Count 8)


    **B.   Defendants Hamrick and Tong's Arguments**

Defendants Hamrick and Tong move for summary judgment on all claims. They move for summary judgment on the grounds that: (1) there was probable cause to arrest Plaintiff; (2) they are entitled to qualified immunity from liability under 42 U.S.C. § 1983 because their actions were objectively reasonable and/or they could have reasonably believed that their conduct did not violate a clearly established constitutional right; (3) they are not liable for Plaintiff's state law based claims because they acted in good faith and without malice, making them entitled to a Hawaii state law conditional privilege; and (4) they cannot be liable for punitive damages because they acted without malice and their actions were not outrageous.

Hamrick and Tong's Motion for Summary Judgment does not address Plaintiff's right to contract claim under 42 U.S.C. § 1981 and illegal search and seizure claim under the Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff makes no argument in his Opposition as to these claims. The Court previously dismissed these claims as to Defendant City and County of Honolulu for failure to state a claim. (See December 30, 2010 Order (Doc. 74)). For the same reasons set forth in that Order, Plaintiff fails to state a section 1981 claim and an illegal search and seizure claim against Defendants Hamrick and Tong. Accordingly, these claims are also **DISMISSED** as to Defendants Hamrick and Tong.

### C. Probable Cause To Arrest Plaintiff

The Fourth Amendment of the United States Constitution requires that police officers have probable cause before effecting an arrest. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime." Grant v. City of Long Beach, 315 F.3d 1081, 1085 (9th Circ. 2002) (quoting United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). A police officer has probable cause to arrest if "'at the moment the arrest was made . . . the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that the suspect had violated a criminal law." Orin v. Barclay, 272 F.3d 1207, 1218 (9th Cir. 2001).

Hamrick and Tong contend that they arrested Plaintiff for trespass in the second degree under Hawaii Revised Statute ("HRS") § 708-814. A person commits the offense of "criminal trespass in the second degree" if:

> (b) The person enters or remains unlawfully in or upon commercial premises after a reasonable warning or request to leave by the owner or lessee of the commercial premises, the owner's or lessee's authorized agent, or a police officer; provided that this paragraph shall not apply to any conduct or activity subject to regulation by the National Labor Relations Act.

HRS § 708-814(b).

As evidence in support of their description of Dawkins's

19

arrest, Hamrick and Tong submitted sworn declarations. (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, (Doc. 81-1)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, (Doc. 81-2)). Hamrick and Tong aver that they arrived at the bank in response to a report of a man arguing with bank employees (Declaration of Zane Hamrick, Exhibit 1 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 3 (Doc. 81-1)); (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 3 (Doc. 81-2)). They aver that they were informed by bank employee Patricia Comeaux and manager Noreen Padeken that Dawkins had been asked to leave, but he refused. (Declaration of Barry Tong, Exhibit 2 to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 4 (Doc. 81-2)). On the date of the incident, Comeaux submitted a written statement to the officers, in which she states that she asked Dawkins to leave several times, and finally called the police. (Statement of Patricia Comeaux, attached as Exhibit B to the Declaration of Barry Tong, filed March 2, 2011 (Doc. 81-2)). Padeken also submitted a written statement to the officers. (Statement of Noreen Padeken, attached as Exhibit C to the Declaration of Barry Tong, filed March 2, 2011, (Doc. 81-2). Padeken stated that she asked Dawkins to leave, and he replied "you

can't tell me that." (_Id._).  Based on the bank employees'
statements, the officers argue, there was probable cause to believe
Dawkins was committing trespass.

Plaintiff does not address the claim that he was repeatedly
asked to leave the bank by employee Patricia Comeaux and manager
Noreen Padeken, and he refused to do so.  Based on Comeaux's and
Padeken's statements to the officers, there was clearly probable
cause to believe that Dawkins was remaining "unlawfully in or upon
commercial premises after a reasonable warning or request to leave
by the owner or lessee of the commercial premises, [or] the owner's
or lessee's authorized agent." HRS § 708-814.

Defendants Hamrick and Tong are **GRANTED SUMMARY JUDGMENT** on
Plaintiff's claim that he was arrested without probable cause in
violation of the Fourth Amendment of the United States Constitution
(Count 3), and on Plaintiff's pendant state law claim for false
arrest[2] (Count 5).


### D.    Qualified Immunity From Liability For Claims Under 42 U.S.C. § 1983

Defendants Hamrick and Tong argue that they are entitled to
qualified immunity from liability for Plaintiff's claims under 42
U.S.C. § 1983.  Specifically, they argue that they are immune from
liability for Plaintiff's claim that he was subjected to excessive

---

[2] Probable cause defeats a Hawaii common law claim for false
arrest. Reed v. City and County of Honolulu, 219 P.2d 98, 109
(Haw. 1994).

force in violation of the Fourth Amendment of the United States Constitution.

The defense of qualified immunity protects police officers from liability for civil damages under 42 U.S.C. § 1983 when performing discretionary functions, unless the officers' conduct violates a "clearly established constitutional or statutory right of which a reasonable person would have known." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001). To apply this standard, the Court must first determine whether the officer's conduct, considered in the light most favorable to the party asserting the injury, violated a constitutional right. Id. ("If no constitutional right was violated, the court need not inquire further.") If the officer's conduct violated a constitutional right, the Court then considers whether the officer could "have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Id.; see also Saucier v. Katz, 533 U.S. 194 (2001).

> **1. Did Defendants Hamrick and Tong Subject Plaintiff to Excessive Force In Violation of the Fourth Amendment of the United States Constitution?**

Under the Fourth Amendment of the United States Constitution, "officers may only use such force as is 'objectively reasonable' under the circumstances." City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). To determine whether the force used was reasonable, court balance

"the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." <u>Graham v. Connor</u>, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u>

Determining whether a police officer's use of force was reasonable or excessive "requires careful attention to the facts and circumstances of each particular case" and a "'careful' balancing of an individual's liberty with the government's interest in the application of force. <u>Santos v. Gates</u>, 287 F.3d 846, 854 (9th Cir. 2002) (quoting <u>Graham</u>, 490 U.S. at 396). "Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." <u>Id.</u>

### a.   Nature and Quality of the Intrusion

When evaluating the nature and quality of the intrusion, the court considers the "type and amount of force inflicted." <u>City of Bremerton</u>, 268 F.3d at 651-52 (quoting <u>Chew v. Gates</u>, 27 F.3d 1432, 1440 (9th Cir. 1994). Dawkins submitted a sworn declaration in which he describes the type and amount of force that he claims was used by the officers. Dawkins avers that he was subjected to the

following forms of force, in chronological order: while in the bank, he was (1) being pushed against a wall; (2) punched twice in the face; (3) shot with a taser; outside the bank, after running away and being chased, he was (4) pushed to the ground; (5) pepper sprayed in the eyes; (6) choked; (7) held down and pushed on by four officers; (8) kicked and hit while on the ground. (Declaration of Whitney Dawkins, filed April 7, 2011, at ¶¶ 13-16 (Doc. 107)). Dawkins states that the taser felt like a "hard punch and electric shock." (<u>Id.</u> at ¶ 14). While being held on the ground and pepper sprayed, Dawkins claims that he held trouble breathing, was choking and gagging, and almost passed out. (<u>Id.</u> at ¶ 16). Dawkins avers that he received severe, life threatening injuries as a result of the officer's use of force, and was hospitalized for two weeks. (<u>Id.</u> at ¶ 21).

Hamrick and Tong dispute many of the details of Dawkins's characterization of the incident, describing it as a "ridiculous portrayal of the events." (Defendants Hamrick and Tong's Motion for Summary Judgment, filed March 2, 2011, at 13 (Doc. 80)). But they do not dispute that they fired a taser at him, took him to the ground twice, and sprayed him with pepper spray in the eyes. Drawing all reasonable inferences in favor of the non-moving party, the Court accepts the statements in Dawkins's declaration as true

for the purposes of this Motion.[3]

In addition to his declaration, Dawkins submitted photos that he claims were taken by a passerby who witnessed him being held on the ground outside the bank. (Exhibit 7, attached to Declaration of Whitney Dawkins, filed March 23, 2011 (Doc. 95-1)). Dawkins states that a person passing by saw him being kicked and beaten on the ground, and complained to the officers that they were using excessive force. (Declaration of Whitney Dawkins, filed April 7, 2011, at ¶ 17 (Doc. 107). Dawkins states that a person took photos and later emailed them to the police. (Id.).

At the hearing on Defendants' Motion for Summary Judgment, Plaintiff's counsel stated that the Defendants refused to provide information regarding the identity of the person who took the photos and supplied them to the police. Defendants are ordered to provide Plaintiff with any information they have with respect to their receipt of the photos and the identity of the person who submitted

---

[3]In their Reply, Hamrick and Tong argue that Plaintiff's declaration is not sufficient to create a genuine issue of material fact because it is self-serving and not corroborated by additional evidence. Although courts sometimes find that a self-serving affidavit does not create a genuine issue of fact where it is uncorroborated and conflicts with other evidence, courts do not uniformly do so. In reviewing a motion for summary judgment, courts must avoid the "temptation to decide which party's version of the facts is more likely true." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). "As we have said many times, summary judgment cannot be used to resolve swearing contests between litigants." Id. Courts routinely find that an affidavit from the nonmoving party is sufficient evidence to defeat a summary judgment motion. See id. In this case, the affidavits of Hamrick and Tong can also be characterized as self-serving.

them.

The photos, which appear to be a sequence of stills taken in quick succession, include a depiction of at least three officers holding Dawkins on the ground. (Exhibit 7, attached to Declaration of Whitney Dawkins, filed March 23, 2011 (Doc. 95-1)). The level of force used by the officers is unclear from the photos. (Id.). There is no testimony from the person who took the photos to explain and authenticate them.

Dawkins also submitted photos that he claims were taken during his hospital stay that show his injuries. (Exhibit 3-A, attached to Plaintiff's Stricken Concise Statement of Facts, filed March 22, 2011 (Doc. 91-5)). The photos show scrapes on Dawkins's legs, arms, and hand. (Id.). Both the Defendants and Dawkins claim their description of the incident is supported by a video taken with the taser gun at the time that Dawkins was shot with it. (Plaintiff's Concise Statement of Facts, filed on April 4, 2011, at ¶ 5 (Doc. 102)). Although both sides claim the taser video is evidence that supports their characterization of the incident, neither party placed the video into evidence. As the video is not in evidence the Court cannot rely on it.

Dawkins describes a use of force that is quite severe and which must be justified by a significant governmental interest. Inside the bank, Dawkins claims that he was punched in the face, tripped to the ground, and shot with a taser, despite not having made any

physical or verbal threats to the officers, and only resisting passively. Outside the bank, Dawkins claims that he was pushed to the ground and then pepper sprayed in the eyes while lying on the ground, having come to a stop. Dawkins claims that the officers held him down, choked him, and kicked and hit him until he almost passed out. Although Hamrick and Tong dispute these allegations, they do not dispute that they used a taser, pepper spray, and tripping techniques to subdue Dawkins. The use of a taser constitutes a significant use of force that must be justified by a comparably important governmental interest. Bryan v. MacPherson, 630 F.3d 805, 824 (9th Cir. 2010). If the officers punched and kicked Dawkins, as he avers, the officers' actions require even more support.

The Ninth Circuit Court of Appeals has considered the effects of tasers at length and held that they constitute an "intermediate, significant level of force that must be justified by the governmental interest involved." Bryan v. MacPherson, 630 F.3d 805, 824 (9th Cir. 2010). In MacPherson, the plaintiff was shot with a taser that caused him to fall face first to the ground, resulting in facial contusions and four fractured teeth. Id. After reviewing the effects of tasers, the Ninth Circuit court held that the "physiological effects, the high levels of pain, and foreseeable risk of physical injury lead us to conclude that the X26 [taser] and similar devices are a greater intrusion than other non-lethal

methods of force we have confronted." _Id._  The court pointed out that tasers deliver a powerful electrical shock that causes "excruciating pain that radiates throughout the body," and although they are considered "non-lethal," "non-lethal . . . is not synonymous with non-excessive." _Id._  The court stated that the pain caused by a taser is "intense, is felt throughout the body, and . . . [may cause] immobilization, disorientation, loss of balance, and weakness." _Id._ (quoting _Matta-Ballesteros v. Henman_, 896 F.2d 255, 256 n. 2 (7th Cir. 1990).

The combined use of a taser, pepper spray, tripping techniques, punches and kicks, and other forms of force Dawkins claims officers Hamrick and Tong used, is a significant level of force that must be justified by a comparably significant governmental interest. _See id._

### b.    The Governmental Interest

When evaluating the governmental interest in the use of force, courts examine three main factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. _McPherson_, 630 F.3d at 825.  In addition to these three factors, courts examine the "totality of the circumstances" and "whatever specific factors may be appropriate in a particular case." _Id._ (quoting _Franklin v. Foxworth_, 31 F.3d 873, 876 (9th Cir. 1994).   After considering these

28

factors, with all reasonable inferences drawn in favor of the nonmoving party, genuine issues of material fact exist that preclude summary judgment. Depending on how the evidence unfolds at trial, a jury could reasonably conclude that the force used by the officers was excessive under the circumstances. First, the severity of the crime at issue was quite low in the context. Although trespassing is a crime and the officers had probable cause to arrest Dawkins for it, under the circumstances in this case it was a relatively minor, non-violent crime. Regarding the second factor, an issue of fact remains as to the extent to which Dawkins was resisting arrest. According to Dawkins, after he was first grabbed by one of the officers, he told them, "I will get my papers and leave." (Declaration of Whitney Dawkins, filed April 7, 2011, at 3 (Doc. 107)). The officers state that Dawkins initially engaged in "passive resistance" by becoming a dead weight and folding his arms tightly across his chest, rather than actively evading arrest. This evidence suggests that Dawkins did not actively resist his arrest prior to the officers' initial use of force.

The "most important" factor concerning the governmental interest is whether the suspect posed an "immediate threat to the safety of the officers or others." <u>Smith v. City of Hemet</u>, 394 F.3d 689, 702 (9th Cir. 2005). The question is whether a reasonable jury could conclude that Dawkins posed little threat to the safety of the officers or others. The officers knew from their prior interactions

with Dawkins that he had a mental health condition, and their action could have exacerbated any threat to safety posed by Dawkins by engaging with him physically. Both Hamrick and Tong concede that they immediately recognized Dawkins as an individual in the community known to have mental issues. Tong states that Dawkins does not have a history of violence, and that he knew police officers had successfully diffused situations with him in the past. (Declaration of Barry Tong, Exhibit 2 to Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011, at ¶ 5 (Doc. 81-2)). The officers presented no evidence to suggest they believed Dawkins was armed, and a reasonable person could infer that they had no reason to expect that he would act inconsistently with his history of non-violence.

In <u>McPherson</u>, the Ninth Circuit Court pointed out that the force used to restrain a mentally ill person should be less intrusive under certain circumstances:

> [I]f Officer MacPherson believed Bryan was mentally disturbed he should have made greater effort to take control of the situation through less intrusive means. As we have held, "[t]he problems posed by, and thus the tactics to be employed against, an unarmed, emotionally distraught individual who is creating a disturbance or resisting arrest are ordinarily different from those involved in law enforcement efforts to subdue an armed and dangerous criminal who has recently committed a serious offense." Although we have refused to create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals, we have found that even "when an emotionally disturbed individual is 'acting out' and inviting officers to used deadly force to subdue him, the governmental interest in such force is diminished by the fact that the officers are confronted

30

> . . . with a mentally ill individual." The same
> reasoning applies to intermediate levels of force. A
> mentally ill individual is in need of a doctor, not a
> jail cell, and in the usual case—where such an individual
> is neither a threat to himself nor to anyone else—the
> government's interest in deploying force to detain him is
> not as substantial as its interest in deploying that
> force to apprehend a dangerous criminal. Moreover, the
> purpose of detaining a mentally ill individual is not to
> punish him, but to help him. The government has an
> important interest in providing assistance to a person in
> need of psychiatric care; thus, the use of force that may
> be justified by that interest necessarily differs both in
> degree and in kind from the use of force that would be
> justified against a person who has committed a crime or
> who poses a threat to the community.

630 F.3d at 829 (internal citations omitted). Hamrick and Tong's

declarations suggest that they knew Dawkins was mentally ill, did

not have a history of violence, and was likely confused. There is

no evidence that Dawkins made any physical or verbal threats to

anyone in the bank, other than telling the officers not to touch him

because he had a lawyer. According to the officers' description of

the incident, Dawkins's initial reaction was simply to move away and

to use passive resistance. Under these circumstances, a reasonable

jury could conclude that the governmental interest in removing

Dawkins from the bank did not justify the level of force used by the

officers. See also Deorle v. Rutherford, 272 F.3d 1272 (9th Cir.

2001) (holding that officers must take into account the fact that

a suspect is mentally disabled when considering whether to use force

and to what degree). Genuine issues of fact remain regarding

whether Hamrick and Tong used excessive force in violation of the

Fourth Amendment of the United States Constitution.

**2. Could The Officers Have Reasonably Believed That Their Conduct Did Not Violate a Clearly Established Constitutional Right?**

A genuine issue of fact exists regarding whether Hamrick and Tong used excessive force in violation of the Fourth Amendment of the United States Constitution. It is also necessary to consider if the officers' conduct violated a clearly established constitutional right of which a reasonable person would have known. MacPherson, 630 F.3d at 832. If police officers' use of force was "premised on a *reasonable* belief that such force was lawful," the officers are entitled to immunity from suit, even if excessive force was deployed. Id.

Whether the officer's conduct violated a clearly established constitutional right by subjecting Dawkins to excessive force turns on issues of fact that are in dispute, including the extent to which Dawkins resisted arrest, whether Dawkins posed a threat to himself and those around him, and whether the officers excessively kicked, choked, and hit him while holding him on the ground. For the purpose of determining whether the officers' conduct violated a clearly established constitutional right of which they should have been aware, the Court accepts Dawkins's allegations as true to the extent they are supported by his affidavit.

Dawkins avers that after officer Hamrick initially grabbed him, he told the officers he would grab his papers and leave. Subsequent

to telling them he would leave the bank, Dawkins alleges he was punched twice in the face, pushed to the ground, and shot with a taser. After fleeing the bank and being chased down, Dawkins avers that he was sprayed with pepper spray in the eyes, choked, and kicked and hit while being held on the ground. Dawkins claims he did not attempt to actively resist until after he was shot with a taser. There is evidence that the officers knew that Dawkins was mentally disabled, did not have a history of violence, and had been successfully diffused by police officers in past situations. There is no evidence that Dawkins physically or verbally threatened anyone prior to the officers' use of force; according to the officers, Dawkins's initial reaction was only to become a dead-weight and use passive resistance.

Viewed in the light most favorable to the non-moving party, and accepting the statements in Dawkins's declaration as true, there is evidence that the officers violated Dawkins's clearly established constitutional right to be free from excessive force. Although the Court does "not need to find closely analogous case law to show that a right is clearly established," Ninth Circuit case law in effect prior to Dawkins's arrest in 2008 establishes that the officers' alleged conduct in this case is a constitutional violation. See, e.g., Blackenhorn v. City of Orange, 485 F.3d 463, 481 (9th Cir. 2007) ("In assessing the state of the law at the time of Blakenhorn's arrest, we need look no further than Graham's holding

33

that force is only justified when there is a need for force."). If Dawkins told the officers he would leave voluntarily, and exhibited no signs that he was armed or violent, as he claims, the officers could not reasonably believe that it was constitutionally permissible to subsequently trip him to the ground, punch, and taser him.

Dawkins submitted medical records as evidence of his injuries. (See Exhibits 6 and 6-A, filed on March 22, 2011 (Docs. 92, 94)). The records indicate that Dawkins suffered abrasions to his right hand, right elbow, and right knee. (Id.). The records also make reference to "supraventricular tachycardia," elevated creatinine levels, rhabdomyolyis, acute kidney failure, schizophrenia, hypothyroidism, and cervicalgia. (Id.). An issue of facts exists as to whether these injuries resulted from Hamrick and Tong's use of force.

Because genuine issues of fact exist regarding whether Defendants Hamrick and Tong are entitled to qualified immunity, their Motion for Summary Judgment on Plaintiff's excessive force claim is **DENIED**.


### E. Conditional Privilege Against State Law Claims

As discussed above, Hamrick and Tong are entitled to summary judgment on Plaintiff's state law claim for false arrest. Plaintiff's two remaining state law claims are for negligence and

34

assault and battery.  Hamrick and Tong argue that the law provides them a conditional privilege protecting them from liability for Plaintiff's state law claims.

Under Hawaii law, non-judicial government officials acting in the performance of their public duties enjoy a "qualified or conditional privilege." Towse v. State, 647 P.2d 696, 702 (Haw. 1982).  The privilege protects the official from liability for tortious acts unless the injured party demonstrates by "clear and convincing proof" that the official was motivated by "malice and not by an otherwise proper purpose." Id.  For torts other than defamation, "actual malice" must be proven to overcome the privilege. Wereb v. Maui County, 727 F.Supp.2d 898, 924 (D. Haw. 2010).  "Actual malice" for purposes of the conditional privilege is defined in its "ordinary and usual sense" to mean "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007).

Because actual malice involves intent, reckless disregard, or ill will, the actual malice requirement is "incompatible with a claim based on negligence." Bartolome v. Kashimoto, 2009 WL 1956278, at *2 (D. Haw. 2009) ("[W]hen 'actual malice' must be shown, a non-judicial official's qualified privilege provides complete immunity from negligence claims."); see also Tagawa v. Maui Pub. Co., 448

P.2d 337, 341 (Haw. 1968) ("[M]ere negligence is not 'actual malice.'") Hamrick and Tong are entitled to summary judgment on Plaintiff's negligence claim.

In Plaintiff's declaration, he has alleged malice with regard to his assault and battery claim. The existence of malice is "generally a question for the jury." <u>Runnels v. Okamoto</u>, 525 P.2d 1125 (Haw. 1974). Dawkins's declaration contains allegations, if proven, that could be the basis of a finding that the officers acted with malice. In his declaration, Dawkins states that the officers grabbed and punched him, tripped him, and shot him with a taser, even though he told the officers he was going to grab his things and leave. (Declaration of Whitney Dawkins, filed April 7, 2011, at 3 (Doc. 107)). There is a question of fact that involves officers Hamrick and Tong's encounter with Dawkins. Initially, Dawkins said he reacted with passive resistance. The officers do not claim that Dawkins physically attacked or threatened them or others prior to the officers initiating physical contact with him. The questions about the use of excessive force extend to the assault and battery claim. If Dawkins proves the officers used excessive force, he must then prove the officers acted with malice to overcome the officers' immunity from the assault and battery claim. The issue of whether the officers acted with malice is a matter for the jury.

Defendants Hamrick and Tong's Motion for Summary Judgment on Plaintiff's state law assault and battery claim is **DENIED.**

36

Defendants Hamrick and Tong's Motion for Summary Judgment on Plaintiff's negligence claim is **GRANTED.**

### D.    Punitive Damages

Defendants Hamrick and Tong argue that Plaintiff is not entitled to punitive damages because he cannot meet his burden of proving that they acted with malice or an otherwise improper purpose.  In order to obtain punitive damages, a plaintiff must prove by clear and convincing evidence that the wrongdoer acted "wantonly or oppressively or with such malice as implies a spirt of mischief or criminal indifference to civil obligations; or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences". Masaki v. General Motors Corp., 780 P.2d 566,572 (Haw. 1989) (internal citation and quotation marks omitted).

As with Plaintiff's state law claim for assault and battery, Plaintiff's allegations of malice create a question of fact which prevents summary judgment.  Defendants Hamrick and Tong's Motion for Summary Judgment on Plaintiff's claim for punitive damages is **DENIED.**

### E.    Conclusion

Defendants Hamrick and Tong are **GRANTED SUMMARY JUDGMENT** on Plaintiff's claims for: (1) arrest without probable cause in

violation of the Fourth Amendment of the United States Constitution (Count 3); (2) state false arrest (Count 5) and negligence (Count 6).  Defendants Hamrick and Tong are **DENIED SUMMARY JUDGMENT** on Plaintiff's claims of excessive force in violation of the Fourth Amendment of the United States Constitution (Count 4); state assault and battery (Count 7) and punitive damages (Count 8).  Plaintiff's claims of right to contract under 42 U.S.C. § 1981 and illegal search and seizure under the Fourth and Fourteenth Amendments of the United States Constitution are **DISMISSED.**

## II.  Defendant City and County of Honolulu's Motion for Summary Judgment

### A.  Remaining Claims Against the City and County of Honolulu

In the Order issued on December 30, 2010, the Court dismissed the following claims against the City and County of Honolulu ("City"):

    (1)   denial of right to contract under 42 U.S.C. § 1981 (Count 3)

    (2)   equal protection under Fourteenth Amendment of the United States Constitution (Count 4)

    (3)   illegal search and seizure under Fourth Amendment of the United States Constitution and under due process clause of the Fourteenth Amendment of the United States Constitution (Count 4)

    (4)   negligent failure to supervise (Counts 5 and 6)

The following claims remain against the City:

    (1)   arrest without probable cause in violation of the Fourth Amendment of the United States Constitution (Count 3)

    (2)   excessive force in violation of the Fourth Amendment of the United States Constitution (Count 4)

(3)  negligent taser firing - respondeat superior (Count
     4)
(4)  false arrest - respondeat superior (Count 5)
(5)  assault and battery - respondeat superior (Count 7)


**B.    Defendant City and County of Honolulu's Arguments**

The City moves for summary judgment on all remaining claims on
the grounds that: (1) the Fourth Amendment arrest without probable
cause and (2) excessive force claims fail because no constitutional
violation occurred, and there is no evidence that the City failed
to adequately supervise or train its police officers; and (3) the
claims based on respondeat superior liability (negligence, false
arrest, and assault and battery) fail because the police officers
are entitled to a conditional privilege.


### 1.    Arrest Without Probable Cause

Defendants Hamrick and Tong's Motion for Summary Judgment is
granted with respect to probable cause.  The officers had probable
cause to arrest Plaintiff for trespass.  Defendant City's Motion for
Summary Judgment on Plaintiff's claim that he was arrested without
probable cause is therefore also **GRANTED.**


### 2.    Excessive Force

Plaintiff alleges that the City is liable for excessive force
allegedly used by Defendants Hamrick and Tong because it failed to
adequately train and supervise the officers.  The City moves for

39

summary judgment on the grounds that there is no evidence the officers used excessive force, and no evidence that the City failed to adequately supervise or train them.  A genuine issue of material fact exists as to whether Defendants Hamrick and Tong used excessive force.

Municipalities are not liable under 42 U.S.C. § 1983 for constitutional violations committed by employees under the theory of respondeat superior, but they can be liable if the constitutional violation resulted from the municipality's failure to adequately train, supervise, or discipline its employees. See City of Canton v. Harris, 489 U.S. 378, 387 (1989); Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658 (1978).  A municipality is liable for a failure to supervise or train its police officers only where the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388.  The plaintiff must show that the constitutional injury could have been avoided if the officers were properly trained. Blankenhorn, 485 F.3d at 484.

The City submitted a declaration from Richard H. Weitzel, an instructor for the Honolulu Police Academy, as evidence that it adequately trains and supervises police officers on appropriate uses of force. (Declaration of Richard H. Weitzel, Exhibit A to Defendants Zane Hamrick and Barry Tong's Concise Statement of Facts, filed March 2, 2011 (Doc. 84-1)).  Weitzel avers that each police

40

officer must complete training at the Honolulu Police Academy, and the training course places a heavy emphasis on teaching recruits the appropriate use of force. (<u>Id.</u> at ¶¶ 10-11). Weitzel states that each officer who uses a taser must complete a certification course on how to safely and effectively operate it. (<u>Id.</u> at ¶ 7). According to his declaration, the officers are required to know the laws governing the use of force, as well as the Honolulu Police Department's policy, which forbids unreasonable or excessive force. (<u>Id.</u> at ¶¶ 14-16).

Plaintiff Whitney Dawkins argues that the City's failure to adequately train and supervise its officers is evidenced by Defendants Hamrick and Tong's conduct. Dawkins's position is that Hamrick and Tong knew he was mentally disabled. The claim is based on a failure to utilize the Honolulu Police Department protocol for handling non-violent mentally disabled people. He also argues that the City's failure to supervise is evidenced by their failure to reprimand the officers after the incident.

The only evidence of a failure to train pointed to by Plaintiff is his own declaration, in which he describes Hamrick and Tong's conduct. Plaintiff's description of Hamrick and Tong's conduct is insufficient to create a genuine issue of fact as to whether the City failed to adequately train the officers. "Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on [a municipality]." <u>Merrit v. County of Los</u>

<u>Angeles</u>, 875 F.2d 765, 770 (9th Cir. 1989). Plaintiff argues that the City ratified the officers' conduct by failing to reprimand them. The single incident at issue in this case does not establish a municipality-wide policy. <u>See</u> <u>Blackenhorn</u>, 485 F.3d at 484 (evidence of performance evaluations and internal reviews regarding plaintiff's arrest were insufficient to establish a city-wide policy); <u>see also</u> <u>Marquez v. City of Phoenix</u>, 2010 WL 3342000, at *17 (D. Ariz. 2010) ("Plaintiff's evidence . . . pertains only to the two officers and the single incident at issue here and does not establish a city-wide policy."). Even if the officers are found to have used excessive force, that finding is insufficient evidence that the officers were improperly trained.

The City is only liable for the excessive force allegedly used by officers Hamrick and Tong if such force resulted from the City's failure to adequately train, supervise, or discipline its employees. <u>City of Canton</u>, 489 U.S. at 387. Plaintiff presents no evidence that the alleged excessive force resulted from the City's failure to adequately train the officers, other than evidence of the use of force itself. Evidence of a single incident of misconduct is insufficient to show a failure to train. <u>Merrit</u>, 875 F.2d at 770. Plaintiff fails to present sufficient evidence that the City is liable for failing to adequately train officers Hamrick and Tong. Defendant City's Motion for Summary Judgment on Plaintiff's excessive force/failure to train claim is **GRANTED.**

### 3. Respondeat Superior Claims

Plaintiff asserts three Hawaii state law based tort claims (negligence, false arrest, and assault and battery) against the City under the respondeat superior theory of liability. In Hawaii, municipal employers are liable under the doctrine of respondeat superior for "torts maliciously committed by an employee acting within the scope of his authority." McCormack v. City and County of Honolulu, 2011 WL 280955, at *6 (D. Haw. 2011); see also Lane v. Yamamoto, 628 P.2d 634, 636 (Haw. Ct. App. 1981). Respondeat superior liability for municipalities extends to intentional torts, including assault and battery. Alexander v. City and County of Honolulu, 545 F.Supp.2d 1122, 1136 (D. Haw. 2008).

The City moves for summary judgment on Plaintiff's state claims based on respondeat superior liability (negligence, false arrest, and assault and battery) on the ground that the police officers are entitled to a conditional privilege. If a government employee is immune from suit, the governmental employer is also immune from suit. Reed v. City and County of Honolulu, 873 P.2d 98, 107 (Haw. 1994).

The officers are entitled to a conditional privilege protecting them from liability for Plaintiff's negligence claim. The "conditional privilege" immunizes the government officials from liability for tortious acts unless they were motivated by malice.

43

<u>Towse v. State</u>, 647 P.2d 696, 702 (Haw. 1982). Negligence is an unintentional tort not requiring malice. <u>Bartolome v. Kashimoto</u>, 2009 WL 1956278, at *2 (D. Haw. 2009); <u>Tagawa v. Maui Pub. Co.</u>, 448 P.2d 337, 341 (Haw. 1968). The City is entitled to summary judgment of Plaintiff's negligence claim.

An issue of fact exists as to whether the officers are entitled to immunity from Plaintiff's assault and battery claim. To overcome the officers' conditional privilege, Plaintiff must prove that the officers acted with malice. <u>Towse</u>, 647 P.2d at 702. The allegations in Plaintiff's declaration could be the basis for a finding that the officers acted with malice. In his declaration, Dawkins states that the officers punched, tripped, and shot him with a taser, even though he told the officers he was going to grab his things and leave. (Declaration of Whitney Dawkins, filed April 7, 2011, at 3 (Doc. 107)). The existence of malice is "generally a question for the jury." <u>Runnels v. Okamoto</u>, 525 P.2d 1125 (Haw. 1974). As there is a genuine issue of fact as to whether the officers acted with malice, the City is not entitled to summary judgment on Plaintiff's assault and battery claim.

Plaintiff's false arrest claim fails because the officers had probable cause to arrest Plaintiff for trespass. Probable cause defeats a Hawaii common law claim for false arrest. <u>Reed v. City and County of Honolulu</u>, 219 P.3d 98, 109 (Haw. 1994). The City is entitled to summary judgment on Plaintiff's false arrest claim.

Accordingly, Defendant City's Motion for Summary Judgment on Plaintiff's negligence and false arrest claims is **GRANTED.** Defendant City's Motion for Summary Judgment on Plaintiff's assault and battery claim is **DENIED.**

**CONCLUSION**

I.   Defendants Zane Hamrick and Barry Tong's Motion for Summary Judgment (Doc. 80) is **GRANTED IN PART AND DENIED IN PART**, as follows:

    A.   Defendants Zane Hamrick and Barry Tong are **GRANTED SUMMARY JUDGMENT** on the following claims:

        (1)   arrest without probable cause in violation of the Fourth Amendment of the United States Constitution (Count 3)

        (2)   false arrest (Count 5)

        (3)   negligence (Count 6)

    B.   The following claims against Defendants Zane Hamrick and Barry Tong are **DISMISSED**:

        (1)   right to contract under 42 U.S.C. § 1981

        (2)   illegal search and seizure under Fourth and Fourteenth Amendments of the United States Constitution

    C.   The following claims remain as Defendants Zane Hamrick and Barry Tong are **DENIED SUMMARY JUDGMENT** on the claims

of:

> > (1) excessive force (Count 4)
> >
> > (2) assault and battery (Count 7)
> >
> > (3) punitive damages (Count 8)

II. Defendant City and County of Honolulu's Motion for Summary Judgment (Doc. 83) is **GRANTED IN PART AND DENIED IN PART,** as follows:

> A. Defendant City and County of Honolulu is **GRANTED SUMMARY JUDGMENT** on the following claims:
>
> > (1) arrest without probable cause in violation of the Fourth Amendment of the United States Constitution (Count 3)
> >
> > (2) false arrest (Count 5)
> >
> > (3) negligence (Count 6)
>
> B. The following claims remain as Defendant City and County of Honolulu is **DENIED SUMMARY JUDGMENT** on the claims of:
>
> > (1) excessive force (Count 4)
> >
> > (2) assault and battery (Count 7)

III. Defendants Zane Hamrick, Barry Tong, and the City and County of Honolulu, are ordered to provide Plaintiff with any information they have with respect to their receipt of the photos attached as

Exhibit 7 to Plaintiff's Declaration, filed March 23, 2011 (Doc. 95-1), and the identity of the person who submitted them.

IT IS SO ORDERED.

DATED: April 26, 2011, Honolulu, Hawaii.



/S/ Helen Gillmor

Helen Gillmor
United States District Judge

Dawkins v. City and County of Honolulu; Zane Hamrick; Barry Tong; Windward Community Federal Credit Union; John Does 1-10, Civil No. 10-00086 HG-KSC; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ZANE HAMRICK AND BARRY TONG'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT.**