IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| Whitney Dawkins, Jr., | ) | Civ. No. 10-00086 HG-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| City and County of Honolulu; | ) | |
| Zane Hamrick; Barry Tong; and | ) | |
| John Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER DENYING PLAINTIFF WHITNEY DAWKINS, JR.'S MOTION FOR NEW TRIAL OR AMENDMENT OF JUDGMENT (DOC. 272)**

On February 6, 2012, a jury returned a verdict in favor of Defendants City and County of Honolulu, Zane Hamrick, and Barry Tong. (Doc. 260).  The jury found that the Defendants did not use excessive force in violation of the Fourth Amendment of the United States Constitution.  The jury found that Defendants Hamrick and Tong committed a battery under Hawaii state common law, but that the officers were not liable for the battery because they did not act with malice.

On March 7, 2012, Plaintiff Whitney Dawkins, Jr. filed a Motion for a New Trial or Amendment of Judgment. (Doc. 272). Plaintiff argues that the Court must enter the verdict in his favor or grant a new trial because the jury's verdict on the federal excessive force claim is inconsistent with the jury's finding on the state law battery claim.  Plaintiff also argues

1

that the evidence at trial was in his favor.

The jury's findings on the federal excessive force claim and the Hawaii common law battery claims are not inconsistent.  The evidence at trial supports the jury's verdict.  Plaintiff's Motion for a New Trial or Amendment of Judgment (Doc. 272) is **DENIED.**

## PROCEDURAL HISTORY

On February 22, 2010, the Plaintiff filed a Complaint. (Doc. 1).

There were two Motions to Dismiss, two Motions for Summary Judgment, and a Motion for Reconsideration filed by the Defendants.  In four Orders, the Court dismissed eight of the Plaintiff's claims.  The Court dismissed all claims against Defendant Windward Community Federal Credit Union pursuant to a settlement agreement.

On January 19, 2012, a jury trial was commenced. (Doc. 233).

On February 6, 2012, the jury returned a verdict in favor of the Defendants. (Doc. 260).

On February 8, 2012, the Clerk of the Court entered Judgment. (Doc. 267).

On March 7, 2012, Plaintiff filed a Motion entitled, "MOTION FOR NEW TRIAL AND OR AMENDMENT OF JUDGMENT." (Doc. 272).

On March 9, 2012, Plaintiff filed an Exhibit "1" in support

of his Motion for a New Trial or Amendment of Judgment. (Doc.
275).

On March 20, 2012, the Defendants filed an Opposition. (Doc.
278).  The Plaintiff did not file a Reply.

Pursuant to Local Rule 7.2(d), the Court elected to decide
the Motion without a hearing.


## BACKGROUND

On February 22, 2010, Plaintiff Whitney Dawkins filed a
Complaint against the City and County of Honolulu, the Windward
Community Federal Credit Union, and individual Defendants Zane
Hamrick and Barry Tong, alleging numerous violations of his
rights under both federal and state law.  January 20, 2011, the
Court issued an Order dismissing all claims against Defendant
Windward Community Federal Credit Union pursuant to a settlement
agreement. (Doc. 75).  After considering two Motions to Dismiss
and two Motions for Summary Judgment filed by the remaining
Defendants, the Court issued Orders that dismissed all of the
Plaintiff's claims except for two: (1) excessive force in
violation of the Fourth Amendment of the United States
Constitution, and (2) battery under Hawaii state law.  After a
six and a half day trial, the jury returned a verdict in favor of
the Defendants on these two claims.

Plaintiff's excessive force and battery claims were based on

an incident that began when the Plaintiff attempted to open an account at the Windward Community Federal Credit Union.  At trial, employees of the credit union testified that they attempted to help the Plaintiff open an account.  The employees stated that the Plaintiff was confused by the process and did not understand their questions.  The Plaintiff has a mental disability, and he persisted in his attempts to open an account even though the communication process broke down.  A credit union employee eventually asked the Plaintiff to leave.  The Plaintiff refused, and a credit union employee called the police.  Police officers Zane Hamrick and Barry Tong arrived at the bank, and they recognized the Plaintiff.  From previous interactions with him, the officers knew the Plaintiff was a person with a mental disability.  Officer Hamrick testified that he asked the Plaintiff to step outside the credit union to talk.  Hamrick testified that after the Plaintiff refused, he attempted to escort the Plaintiff outside with a light touch.

There were different accounts of precisely what events followed.  Witnesses to the event testified that there was a physical struggle between the officers and the Plaintiff.  Officer Hamrick testified that the Plaintiff pushed him away, causing the officer to crash into a chair.   A taser dart was then fired at the Plaintiff.  A video taken from the taser gun showed a taser dart being shot in the Plaintiff's direction,

4

appearing to bounce off the Plaintiff, and the Plaintiff then fleeing the credit union.

Witnesses testified that the police officers pursued the Plaintiff, and caught up to him outside the credit union.  One witness testified that he saw the Plaintiff walking, and then saw a police officer approach and tackle the Plaintiff to the ground. Photographs taken by a bystander showed several officers appearing to be holding the Plaintiff on the ground.  Officer Hamrick testified that the Plaintiff was struggling and resisting arrest, and he sprayed the Plaintiff with pepper spray to subdue him.  Bystanders who witnessed the evident described the force used by the officers differently.  Although one witness testified that the officers were punching the Plaintiff even though he was not resisting, another witness testified that the Plaintiff appeared to be resisting arrest.

The jury returned a verdict in favor of the Defendants on both Plaintiff's federal excessive force and state law battery claims.  The jury found that Defendants Hamrick and Tong did not use excessive force in violation of the Fourth Amendment of the United States Constitution.  As to the state claim, the jury found that the officers committed a battery against the Plaintiff by intentionally contacting him, without his consent, in a manner that was unreasonable under the circumstances.  The jury found, however, that the officers did not commit the battery with

malice.   Under Hawaii state law, police officers are entitled to

qualified immunity from liability for battery unless they acted

with malice.   The jury verdict was in favor of the Defendants on

both claims.

The jury answered the relevant questions as follows:

1.   Did Plaintiff Whitney Dawkins, Jr. establish by a
     preponderance of the evidence that Defendant Zane
     Hamrick and/or Defendant Barry Tong used excessive
     force against Plaintiff, thereby violating his
     Fourth Amendment rights under the United States
     Constitution?

     Jury Answer: No.

2.   On Plaintiff Whitney Dawkins, Jr.'s battery claim
     against Defendants City and County of Honolulu,
     Zane Hamrick, and Barry Tong:

     2A   Do you find by a preponderance of the
          evidence that Defendant Zane Hamrick and/or
          Defendant Barry Tong intentionally contacted
          Plaintiff's body, without Plaintiff's
          consent, in a manner that was unreasonable
          given the circumstances?

     Jury Answer: Yes.

     2B   Do you find by clear and convincing evidence
          that Defendant Zane Hamrick and/or Defendant
          Barry Tong acted with malice?

     Jury Answer: No.

(Special Verdict Form (Doc. 261-1)) (instructions and answer

lines omitted).

The jury answered question 1, on excessive force, "No."  The

jury answered question 2A, on battery, "Yes."  On question 2B, on

the required malice element for the battery, the jury answered:

"No."  In moving for judgment in his favor or for a new trial,

the Plaintiff argues that the jury's answers to questions 1 and

2A are inherently inconsistent.


## STANDARDS OF REVIEW

### I.    Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) allows a party to file

a renewed motion for judgment as a matter of law after entry of

judgment on a jury verdict.  To file a renewed motion under Rule

50(b), a party generally must first file a motion for judgment as

a matter of law under Rule 50(a) before the case is submitted to

the jury. E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961

(9th Cir. 2009).  If the court denies or defers ruling on the

Rule 50(a) motion and the jury returns a verdict against the

moving party, the party may then renew the motion under Rule

50(b). Id.  Because it is a "renewed" motion, a party cannot

"raise arguments in its post-trial motion for judgment as a

matter of law under Rule 50(b) that it did not raise in its

preverdict Rule 50(a) motion." Id. (quoting Freund v. Nycomed

Amersham, 347 F.3d 752, 761 (9th Cir. 2003)).

The rule that a party must move for judgment as a matter of

law before the case is submitted to a jury does not apply if the

motion alleges inconsistencies in the answers given to a special

verdict. Pierce v. Souther Pacific Transp. Co., 823 F.2d 1366,

7

1369 (9th Cir. 1987) ("When a special verdict does not support a judgment a reviewing court may make an exception to the Rule 50(b) requirement of a motion for directed verdict as a prerequisite to a motion JNOV."); <u>Zhang v. American Gem Seafoods, Inc.</u>, 339 F.3d 1020, 1033 (9th Cir. 2003).

In ruling on a 50(b) motion, the Court may allow judgment on the verdict, order a new trial, or reverse the jury and direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). The court will direct judgment as a matter of law if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." <u>Go Daddy Software, Inc.</u>, 581 F.3d at 961 (quoting <u>Josephs v. Pac. Bell</u>, 443 F.3d 1050, 1062 (9th Cir. 2006)).  When considering the motion, the court "may not make credibility determinations or weigh the evidence." <u>Id.</u> (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000)).  Instead, the court reviews the evidence "in the light most favorable to the nonmoving party" and draws "all reasonable inferences in that party's favor." <u>Id.</u> (quoting <u>Josephs</u>, 443 F.3d at 1062)).  "While the district court may not resolve conflicts in the testimony or weigh the evidence, it may evaluate evidence at least to the extent of determining whether there is substantial evidence to support the verdict. '[A] mere scintilla of evidence will not suffice.'" <u>Von Zuckerstein v. Argonne Nat'l Laboratory</u>, 984 F.2d

1467, 1471 (7th Cir. 1993) (citing <u>La Montagne v. American Convenience Products, Inc.</u>, 750 F.2d 1405, 1410 (7th Cir. 1984)).

The Ninth Circuit has defined substantial evidence as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." <u>Maynard v. City of San Jose</u>, 37 F.3d 1396, 1404 (9th Cir. 1994) (citing <u>George v. City of Long Beach</u>, 973 F.2d 706, 709 (9th Cir. 1992)).

## II. New Trial

Federal Rule of Civil Procedure 50(b) allows a party filing a renewed motion for judgment as a matter of law to include an alternative request for a new trial under Rule 59. Rule 59 allows the court to grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). Although Rule 59 does not specify the grounds on which a court may order a new trial, historically recognized grounds include: "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 729 (9th Cir. 2007) (quoting <u>Passantino v. Johnson & Johnson Consumer Prods.</u>, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)).

"When a motion for a new trial is based on insufficiency of

the evidence, a 'stringent standard applies' and a new trial may be granted 'only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a seriously erroneous result.'" MLM Property, LLC v. Country Cas. Ins. Co. 2010 WL 1948609, at * 2 (D. Or. 2010) (quoting Digidyne Corp. v. Data Gen. Corp., 734 F.2d 1336, 1347 (9th Cir. 1984)).

## ANALYSIS

The Plaintiff argues that the Court should amend the Judgment to render it in his favor, or grant a new trial, because the jury's verdict is inconsistent. Although the Plaintiff does not explicitly argue that the verdict must also be overturned based on the weight of the evidence, at several points in his Motion he argues that the evidence at trial was in his favor. Based on the Plaintiff's repeated references to the weight of the evidence, that Court construes his Motion as both arguing that he is entitled to judgment as a matter of law or a new trial based on the inconsistency of the verdict *and* based on the weight of the evidence.

## I.    Inconsistency in Verdict

A party may file a motion for judgment as a matter of law on the ground that the jury's answers to the verdict questions are inconsistent. See Pierce v. Souther Pacific Transp. Co., 823 F.2d

1366, 1369 (9th Cir. 1987).  The procedure for resolving an inconsistency in a verdict varies depending on whether the jury was given a special verdict under Federal Rule of Civil Procedure 49(a), or a general verdict (with or without special interrogatories) under Federal Rule of Civil Procedure 49(b). See Floyd v. Laws, 929 F.2d 1390, 1395 (9th Cir. 1991); Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1036 (9th Cir. 2003).

The nature of the verdict "is of critical importance because inconsistent general verdicts on separate claims are typically permitted to stand . . . whereas irreconcilably inconsistent special verdicts require a new trial." Duhn Oil Tool, Inc. v. Cooper Cameron Corp., 818 F.Supp.2d 1193, 1219 (E.D. Cal. 2011). Whether a verdict is special or general also may affect the waiver rules that apply when a party fails to object prior to the jury being dismissed. See id.

## A.   The jury was given a general verdict and a special verdict

Federal Rule of Civil Procedure 49 contemplates three types of verdicts: (1) common law general verdicts without interrogatories, (2) special verdicts under Rule 49(a), and (3) general verdicts with interrogatories under Rule 49(b). Zhang, 339 F.3d at 1031.  In a general verdict, a jury makes a finding as to the ultimate legal and factual question at issue in a case. Floyd, 929 F.2d at 1395. In a special verdict, a jury only makes

11

factual findings, and the court then applies the law to those findings. Id.  In a general verdict with written questions (also called "special interrogatories"), the jury both answers questions of fact and reaches the ultimate legal question at issue. Id.  A verdict form may be comprised of a mixture of these types, and a jury may be asked to "return multiple general verdicts as to each claim, and each party, in a lawsuit, without undermining the general nature of its verdicts." Zhang, 339 F.3d at 1031.

The distinction between general and special verdicts is sometimes unclear in practice, and "[o]ften courts are unable to decide whether a verdict is a special verdict under Rule 49(a) or a general verdict with interrogatories under Rule 49(b)." Floyd, 929 F.2d at 1395 ("As a practical matter, it seems that the form of a general verdict with interrogatories is virtually indistinguishable from that of a special verdict."); see also Mason v. Ford Motor Co., Inc., 307 F.3d 1271, 1274-75 (11th Cir. 2002) ("Categorizing a verdict as a general verdict, or as a special verdict under Rule 49(a), or as a general verdict with special interrogatories under Rule 49(b), should be—but too often seems not—a simple matter."); Denny v. Ford Motor Co., 42 F.3d 106, 111 (2d Cir. 1994) ("no clear definition in our caselaw of what constitutes a Rule 49(a) verdict and what constitutes a Rule 49(b) verdict"); Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d

12

88, 104 n. 16 (3d Cir. 1993) ("as in many cases, it is not entirely clear whether the verdict is governed by Fed. R. Civ. P. 49(a) or 49(b)").

Although special verdicts and general verdicts with special interrogatories sometimes appear similar, "the key" is "whether the jury announces the ultimate legal result of each claim." Zhang, 339 F.3d at 1031. "If the jury announces only its ultimate conclusions, it returns an ordinary general verdict; if it makes factual findings in addition to the ultimate legal conclusions, it returns a general verdict with interrogatories. If it returns only factual findings, leaving the court to determine the ultimate legal result, it returns a special verdict." Id.

The three basic categories of verdicts (special verdicts, general verdicts, and general verdicts with interrogatories), are "not adequate to capture every answer that a jury may give." Zhang, F.3d at 1031. Juries may also be asked to make subsidiary legal determinations that do not resolve the ultimate legal question at issue:

> In addition to the ultimate legal conclusion in a case, a jury may make legal conclusions as to subsidiary issues, such as affirmative defenses, or the amount of damages owed, which are neither findings of fact nor quite "verdicts." Such answers are similar in kind to general verdicts, because they require application of the law to the facts, but we have found no precise label for them.

Id.

Here, the jury was given a general verdict for the excessive force claim and a special verdict for the battery claim. For the excessive force claim, the jury was asked to determine whether the Defendants used excessive force in violation of the Fourth Amendment and, if so, the amount of the Plaintiff's damages. As the jury was asked to determine the ultimate question of the Defendants' liability for the excessive force claim, the jury was presented with a general verdict on that claim. See Floyd, 929 F.2d at 1395. Although the verdict form included a separate question about the Plaintiff's damages for excessive force, a "damage award is not really a separate general verdict." Zhang, 339 F.3d at 1036. The jury determined that the Defendants were not liable for excessive force.

With respect to the battery claim, however, the jury was instead asked to answer two questions of fact. The jury was first asked whether Defendants Hamrick and/or Tong intentionally contacted the Plaintiff's body in a manner that was unreasonable under the circumstances. This is primarily a question of fact. Durante v. City of Reno, 2006 WL 240797, at *6 (D. Nev. 2006) ("Whether or not [an action] . . . constitutes a battery is generally a question of fact."). The jury was then asked whether, if Hamrick and Tong had so contacted the Plaintiff, they did so with malice. The existence of malice is also generally a question of fact. See Beamer v. Nishiki, 670 P.2d 1264, 1274

14

(Haw. 1983). Under Hawaii state law, police officers are entitled to qualified immunity from liability for battery unless there is clear and convincing evidence that they acted with malice.

As the jury was only asked to answer two factual questions regarding the battery claim and not about the Defendants' ultimate legal liability for battery, these questions together constituted a special verdict. Id.; see also Bates v. Jean, 745 F.2d 1146 (7th Cir. 1984) (determining that a similarly formed verdict was a special verdict). The verdict form internally applied the law to the jury's determination of the factual issues bearing on the battery claim: whether a battery occurred and, if so, whether it was committed with malice. The verdict form instructed the jury to answer the subsequent questions regarding Plaintiff's damages for the battery only if it first answered both of the factual questions in the affirmative. The jury answered the first question in the affirmative, finding that both Hamrick and Tong had intentionally contacted the Plaintiff's body in a manner that was unreasonable under the circumstances. But the jury answered the second question, as to whether there was clear and convincing evidence that the officers acted with malice, in the negative.

**B. The jury's answers to the verdict questions are not inherently inconsistent**

15

The Plaintiff argues that the jury's special verdict finding that Defendants Hamrick and Tong intentionally contacted his body in a manner that was unreasonable under the circumstances (i.e., committed a battery) is inherently inconsistent with the jury's general verdict that the officers did not use excessive force. If the officers committed a battery, Plaintiff argues, then they also necessarily used excessive force.  Plaintiff maintains that the Court must render judgment in his favor on the excessive force claim or order a new trial as a result.

When there is an inconsistency between an answer to a general verdict and a written factual question, the court must "attempt to sustain the judgment by harmonizing the answers and the verdict." Wilkes v. Reyes, 5 F.3d 412, 415 (9th Cir. 1993); see also Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 119 (1963) (In considering jury answers to questions in a special verdict, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them . . . . We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, . . . before we are free to disregard the jury's special verdict and remand the case for a new trial."); Atlantic & Gulf Stevedores, Inc., v. Ellerman Lines, Ltd., 369 U.S. 355, 364 (1962) ("Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way"); Affolder v. New York, Chi. &

16

St. L. R. Co., 339 U.S. 96 (1950).

If the court cannot harmonize the answers, Federal Rule of Civil Procedure 49(b) provides that the court may: (1) enter "an appropriate judgment according to the answers, notwithstanding the general verdict;" (2) "direct the jury to further consider its answers and verdict;" or (3) "order a new trial."  A court may "exercise its authority under Rule 49(b) and enter judgment in accordance with the answers," however, "only if it is not reasonably possible to resolve the apparent inconsistency between the answers and the verdict." Wilkes, 5 F.3d at 415.

Here, no action is necessary to remedy the verdict because the jury's answers to the verdict questions are not inherently inconsistent.  The tort of excessive force under the Fourth Amendment of the United States Constitution is not identical to the tort of battery under Hawaii common law.  Excessive force and battery are distinct claims that are derived from different legal systems, and they have different definitions, different applicable standards, and different bodies of case-law interpreting their scope and application. See Askew v. Millerd, 191 F.3d 953, 958 (8th Cir. 1999) (an "assault and battery . . . may not constitute an excessive force"); Haberthur v. City of Raymore, 119 F.3d 720, 723 (8th Cir. 1997) ("Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates state law will create liability under

17

it."); <u>Rogers v. Cofield</u>, 2011 WL 6140974, at *12 (D. Mass. 2011) ("plaintiff correctly points out that the battery and the section 1983 excessive force claims are not mirror images.").

The jury was instructed to consider the Plaintiff's excessive force and battery claims separately, and was given different instructions for each claim setting forth their meaning and scope. Although excessive force and battery both require an inquiry into the "reasonableness" of the use of physical force, federal courts and Hawaii state courts' case-law interpretations of that standard differ.

The Ninth Circuit Court of Appeals has considered excessive force claims in many situations, and has set forth a number of specific and detailed factors that should be considered when evaluating whether force is excessive under the Fourth Amendment, including: (1) the severity of the crime or other circumstances to which the officers were responding; (2) whether the plaintiff posed an immediate threat to the safety of the officers or to others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) the amount of time and any changing circumstances during which police officers had to determine the type and amount of force that appeared to be necessary; (5) the type and amount of force used; (6) the availability of alternative methods to take the plaintiff into custody, and/or subdue him; and (7) whether a warning was given

before force was used, if it was feasible to give a warning. <u>See</u> Ninth Circuit Model Jury Instruction No. 9.22.

Hawaii state courts have not developed as detailed a body of case-law interpreting the meaning of unreasonableness in the context of battery.  Nor have they adopted the Ninth Circuit's jurisprudence on excessive force for battery claims. <u>Cf.</u> <u>Zhang</u>, 339 F.3d at 1034, n. 7 (considering an alleged inconsistency between a jury's verdicts on federal and state law discrimination claims, and noting: "[The appellants] cite no caselaw that indicates that the federal definition of 'motivating factor' is equivalent to the Washington law definition of 'substantial factor.' . . . [The Washington Supreme Court] did not suggest that this test was equivalent to the test under federal law, and no subsequent Washington or Ninth Circuit decision has done so.").

As excessive force and battery are unique claims with unique bodies of case-law interpreting each claim, the jury was given quite different instructions for applying each claim to the facts of the case.  For the excessive force claim, the jury was instructed to take into account the seven specific factors, listed above, which are based on Ninth Circuit case-law and the Ninth Circuit Model Jury Instruction on excessive force.  The jury was not instructed to take into account these factors with respect to the Hawaii state common law battery claim.  For the

battery claim, the jury was given a quite different instruction that directed the jury to determine whether the Defendants intentionally contacted the Plaintiff's body in a manner that was unreasonable given the circumstances.

Although both excessive force and battery claims require consideration into the "reasonableness" of force, they are not interchangeable claims and the meaning of "reasonableness" provided by the courts with respect to each claim has not been held to be identical.  As a result, there is no inconsistency between the jury's finding that the officers did not use excessive force and the jury's finding that the officers committed a battery. See Carter v. Chicago Police Officers, 165 F.3d 1071 (7th Cir. 1998) ("In light of the different standards required to hold [the defendants] liable on the federal and state claims [for excessive force and battery]," the jury's disparate liability findings on these claims was a "permissible conclusion."); Frohmuth v. Metropolitan Gov. of Nashville and Davidson County, Tennessee, 101 Fed.Appx. 56, 60 (6th Cir. 2004) (finding no necessary inconsistency between a jury's finding that police officers used excessive force under the United States Constitution but did not commit an assault and battery under state law).  The jury's findings with respect to battery and excessive force are not inconsistent, therefore there is no need to reconcile the verdict.

20

**C.  Even if the jury's answers had been inconsistent, the verdict would still stand**

It is well-established that courts "have the power to uphold the time-honored right of a jury to render a compromise verdict, and to sustain a verdict which is substantial." Karcesky v. Laria, 114 A.2d 150, 154 (Pa. 1955).  "One of the great values of jury trial . . . is its ability to reflect the community sense of over-all fairness, and this may not in all cases coincide with the written law and the instructions which the court must give." F. James & G. Hazard, Civil Procedure 394 (3d ed. 1985).  In keeping with purpose of the jury trial, "the refusal of a trial court to set aside a verdict obviously representing a compromise has frequently, and quite properly, been upheld." Id. at 384; see also City of Los Angeles v. Heller, 475 U.S. 796 (1986) (Stevens, J., dissenting).[1]

In the Ninth Circuit, legal inconsistencies between general verdicts on different claims are upheld. Zhang v. American Gem Seafoods, Inc., 339 F.3d 1020, 1035 (9th Cir. 2003) ("[L]egally inconsistent verdicts 'may nonetheless stand on appeal even though inconsistent.") (quoting International Longshoremen's Union v. Hawaiian Pineapple Co., 226 F.2d 875 (9th Cir. 1955)).

---

[1]Justice Stevens' contention that inconsistent verdicts can be allowed to stand was not disputed by the majority. See Zhang, 339 F.3d at 1035 n. 9 ("This particular point of Justice Stevens's dissent was not contradicted by the majority opinion for the Court.").

21

In Zhang, the Ninth Circuit Court of Appeals explained that "inconsistencies are problematic and require a new trial only if they arise between two or more factual findings." 339 F.3d at 1036.

In a special verdict, of course, a jury only makes factual findings and the court must apply the law to those findings. Inconsistencies in special verdicts are problematic when the court would have to set aside one of the jury's factual findings to reach a legal outcome, because doing so would infringe on the right to a jury trial under the Seventh Amendment of the United States Constitution. Id. ("The Seventh Amendment to the Constitution guarantees that 'no fact tried by a jury shall be otherwise re-examined in any Court of the United States' except 'according to the rules of the common law.'"). Inconsistencies between answers to written factual questions in a general verdict may also be problematic for the same reason. Id. When the factual answers are consistent and it is only the jury's answer to the general verdict on liability that is inconsistent, however, "trial courts have discretion to enter judgment on the factual findings." Id.

Here, the alleged inconsistency in the verdict does not arise between "two or more factual findings." Id. Instead, Plaintiff argues that there is a legal inconsistency between the jury's conclusion that the officers did not use excessive force

on the federal claim and the jury's conclusion as to the first part of the common law elements of the state battery claim.  Even if the jury's conclusions regarding these separate claims were legally inconsistent, the verdict would be upheld.  This type of inconsistency, between a general verdict on one claim and a factual finding in a special verdict on another claim, is akin to an inconsistency between two general verdicts on similar federal and state claims.  The Court is without power to remedy inconsistencies of this nature. Zhang, 339 F.3d at 1034; see also Venezia v. Bentley Motors, Inc., 374 Fed.Appx. 765, 768 (9th Cir. 2010) (inconsistencies between general verdicts on federal and state claims "do not merit new trials.").  As the Court of Appeals explained in Zhang, considering an alleged inconsistency between a jury's split findings on federal and state law discrimination claims:

> The appellants' claim that the split verdict between the federal law and Washington state law discrimination claims is inconsistent fails because such inconsistencies, when permitted by jury instructions, are simply not reviewable upon appeal.  Unless one legal conclusion is the prerequisite for another, inconsistencies between them must stand.

339 F.3d at 1034; see also  Malm v. United States Lines Co., 269 F.Supp. 731, 731-732 (S.D.N.Y.), aff'd, 378 F.2d 941 (2d Cir. 1967) (per curiam) ("Inconsistent jury verdicts upon different counts or claims are not an anomaly in the law, which at times recognizes a jury's right to an idiosyncratic position . . . .").

Plaintiff has failed to point to an inconsistency in the verdict and, even if the jury's findings on the federal excessive force claim and state battery claim were inconsistent, they would nevertheless be upheld.

## II.  Weight of the Evidence at Trial

The Plaintiff also appears to argue that he is entitled to judgment in his favor or a new trial because the evidence presented at trial was in his favor.  The standard for overturning a jury verdict and entering a contrary judgment or ordering a new trial based on the weight of the evidence is very high.  The court will direct judgment as a matter of law only if "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict."  Go Daddy Software, Inc., 581 F.3d at 961 (quoting Josephs v. Pac. Bell, 443 F.3d 1050, 1062 (9th Cir. 2006)).  The court must review the evidence "in the light most favorable to the nonmoving party" and draw[] "all reasonable inferences in that party's favor." Id. (quoting Josephs, 443 F.3d at 1062)). When considering the motion, the court "may not make credibility determinations or weigh the evidence." Id. (quoting Reeves v. Sanderson Plumbling Prods., Inc., 530 U.S. 133, 150 (2000)).  A new trial, similarly, may be granted "only if the verdict is against the great weight of the evidence or it is quite clear that the jury has reached a

24

seriously erroneous result." <u>MLM Property, LLC v. Country Cas. Ins. Co.</u> 2010 WL 1948609, at * 2 (D. Or. 2010) (quoting <u>Digidyne Corp. v. Data Gen. Corp.</u>, 734 F.2d 1336, 1347 (9th Cir. 1984)).


**A.   The verdict is not against the great weight of the evidence**

Viewed in the light most favorable to the Defendants, the evidence at trial supports the jury's verdict.  Employees from the credit union testified that they called the police because the Plaintiff was being argumentative and refusing to leave. Officer Hamrick testified that when he arrived at the scene he asked the Plaintiff to step outside the bank, and the Plaintiff refused.  Hamrick testified that he then attempted to escort the Plaintiff outside with a light touch, but the Plaintiff resisted. A struggle ensued between Officers Hamrick and Tong and the Plaintiff, and Hamrick testified that the Plaintiff pushed him away, causing him to crash into a chair.  The officers testified that because they were unable to control the Plaintiff, they fired a taser at him.  The Plaintiff then ran out of the bank.

Testimony from several individuals, including the officers and bystander witnesses outside the credit union, reflected that the officers caught up to the Plaintiff and were able to hold him down on the ground.  Although one witness who happened upon the scene testified that he saw the officers punching the Plaintiff even though he was not resisting, other witnesses at the scene

gave very different descriptions of the incident.  Another witness, also an uninvolved passerby, testified that the Plaintiff was resisting and that the officers did not use an excessive amount of force to subdue him.

While the evidence at trial was at times conflicting and ambiguous, there was testimony that supports the jury's verdict, particularly when viewed in the light most favorable to the Defendants.  It is the duty of the jury, and not the Court, to determine the credibility of the witnesses and their different versions of the events. United States v. Leung, 35 F.3d 1402, 1405 (9th Cir. 1994).  The evidence was far from being so clearly in the Plaintiff's favor that it "permits only one reasonable conclusion and that conclusion is contrary to the jury's verdict." Go Daddy Software, Inc., 581 F.3d at 961 (internal citation and quotation marks omitted).  It is not "quite clear that the jury has reached a seriously erroneous result." MLM Property, LLC v. Country Cas. Ins. Co. 2010 WL 1948609, at * 2 (internal citation and quotation marks omitted).  Plaintiff fails to establish that he is entitled to judgment as a matter of law or to a new trial based on the great weight of the evidence.

### CONCLUSION

Plaintiff Whitney Dawkins, Jr.'s Motion for a New Trial or Amendment of Judgment (Doc. 272) is **DENIED.**


IT IS SO ORDERED.

DATED: May 31, 2012, Honolulu, Hawaii.



　　　　　　　　　　　　　　　　　　　　　　/S/ Helen Gillmor

Helen Gillmor
United States District Judge


Dawkins, Jr. v. City and County of Honolulu; Zane Hamrick; Barry Tong; John Does 1-10, Civ. No. 10-00086 HG-KSC; **ORDER DENYING PLAINTIFF WHITNEY DAWKINS, JR.'S MOTION FOR NEW TRIAL OR AMENDMENT OF JUDGMENT (DOC. 272).**